[No. F008887. Fifth Dist. Mar. 29, 1988.]

BP ALASKA EXPLORATION, INC., Petitioner, v.
THE SUPERIOR COURT OF KERN COUNTY, Respondent;
NAHAMA & WEAGANT ENERGY COMPANY 1984
EXPLORATORY DRILLING LIMITED PARTNERSHIP et al.,
Real Parties in Interest.

**COUNSEL**

Bright & Brown, James S. Bright, Gregory C. Brown, Joseph A. Drazek, Clifford, Jenkins & Brown and J. Craig Jenkins for Petitioner.

No appearance for Respondent.

Gibson, Dunn & Crutcher, Robert W. Loewen, Craig H. Millet, John R. Crews, Klein, Wegis & Duggan, Anthony J. Klein and J. L. Rosenlieb for Real Parties in Interest.

OPINION

FRANSON, P. J.—

## INTRODUCTION

Two basic issues are involved in this appeal: (1) whether the crime-fraud exception to the lawyer-client privilege provided in Evidence Code section 956 applies to writings protected by the attorney work product rule and (2) the proper standard for determining whether the party seeking discovery of an otherwise privileged attorney-client communication has made the prima facie showing of crime or fraud required to negate the privilege.

## THE CASE

Petitioner, BP Alaska Exploration, Inc. (BPAE), seeks a writ of prohibition directing the respondent Kern County Superior Court to vacate its order requiring production of several documents and compelling BPAE's president to answer deposition questions. BPAE claims the communications are protected by the attorney-client privilege (Evid. Code, § 954) and the attorney work product rule (formerly Code Civ. Proc., § 2016, subd. (b), now § 2018). Real parties in interest, Nahama & Weagant Energy Company 1984 Exploratory Drilling Limited Partnership and Nahama & Weagant Company (collectively referred to as NWEC), argue the privileges were vitiated by Evidence Code section 956 because BPAE sought counsel's services to commit a fraud. This court issued an order to show cause to determine whether the communications are protected from disclosure.

■ We conclude that the crime-fraud exception provided in Evidence Code section 956 does not apply to writings protected by the absolute work product rule; hence, the trial court erred in ordering the discovery of the contents of writings protected by the rule. ■ However, we also conclude that NWEC made the necessary evidentiary showing to invoke the fraud exception to the attorney-client privilege. We define the necessary evidentiary showing as a prima facie proof that BPAE sought or obtained the services of its attorneys with the intent to enable it to commit or to plan to commit a fraud. We will remand the matter to the trial court with directions to reconsider the discovery motion in the light of our rulings.

## THE FACTS

NWEC claims it had unique, confidential geological ideas based on many years of research and analysis to develop underground oil and gas reserves in an area known in the industry as the Bakersfield Arch in Kern County. On March 4, 1985, NWEC proposed to BPAE that they join in a large-scale exploration venture in the Arch area controlled by Tenneco Oil Company (Tenneco). To persuade BPAE to participate, NWEC disclosed confidential information about five prospects on Tenneco land and other prospects on adjoining property. NWEC delivered maps, montages and other proprietary data to BPAE for its use in evaluating the proposal.

On March 11, 1985, NWEC introduced Steve Rogers and Martyn Eames of BPAE to Tenneco. At that time, Tenneco presented a proposal to Rogers that it had made to other industry members of a 33,000-acre exploration venture. NWEC was aware of that venture. It was narrower in scope but similar in concept to the Tenneco proposal which NWEC had recommended to BPAE at the March 4 meeting.

On March 21, 1985, Richard Hubbard, chief geologist for BPAE, called NWEC. He reported that BPAE's affiliate in London was not interested in the 33,000-acre Tenneco proposal but that he still hoped to convince them of the merits of the larger NWEC proposal.

NWEC learned of a BPAE/Tenneco exploration agreement when it was announced in trade publications in September 1985. On October 22, 1985, Rod Nahama of NWEC wrote Mike Brownhill, BPAE's vice president in charge of exploration, asking for an explanation of BPAE's decision to exclude NWEC from the exploration agreement. Nahama believed, based on the discussions of the parties and the industry custom that there was an implied agreement that NWEC would participate in the BPAE/Tenneco venture.

Brownhill discussed NWEC's claims with Christopher Gibson-Smith, BPAE's president. Neither Brownhill nor Gibson-Smith had been with BPAE when NWEC made its proposal in March 1985. Because of the threat of litigation, Gibson-Smith asked Frederick Dorey, BPAE's general counsel, and Bright and Brown, BPAE's outside counsel, to assist Brownhill in investigating NWEC's claims.

Sometime during the investigation, Bright and Brown sent a letter to BPAE regarding the investigation.

On November 11, 1985, Rod Nahama and Graham Dryden of NWEC met with Brownhill and Richard Hubbard of BPAE to discuss each side's

position. After the meeting, at general counsel Dorey's direction, Brownhill prepared a memorandum summarizing the meeting and sent copies to Dorey and other BPAE personnel for their evaluation.

At the conclusion of the investigation and with the approval of Gibson-Smith and Dorey, Brownhill wrote Nahama on December 23, 1985, denying that NWEC had any right to participate in the Tenneco agreement and stating various reasons for his conclusion. NWEC contends the letter contains six misrepresentations of fact which were aimed at convincing NWEC that the confidential information NWEC provided to BPAE did not contribute to BPAE's decision to proceed with the Tenneco exploration agreement.

NWEC filed suit in August 1986. The second amended complaint alleges multiple causes of action—that BPAE breached an implied-in-fact agreement that BPAE would not use NWEC's confidential information without granting NWEC an interest in the Tenneco play, that BPAE acted in bad faith and without probable cause in denying the existence of the contractual obligation to NWEC; that BPAE breached a confidential relationship with NWEC, misappropriated trade secrets, engaged in unfair competition and received unjust enrichment all as a result of its conduct in not including NWEC in the Tenneco project.

NWEC sought discovery from BPAE about its investigation of NWEC's claim. BPAE refused to divulge four communications related to the investigation on the ground they were protected by the attorney-client privilege and the work product rule. The communications are as follows: (1) the written report prepared by Bright and Brown, outside counsel, retained by BPAE to assist in evaluating NWEC's claims; (2) the written report of Dorey, BPAE's general counsel, allegedly prepared for BPAE during the investigation;[1] (3) the memo of Brownhill, BPAE's vice president in charge of exploration, prepared at the direction of general counsel Dorey, and describing the November 27, 1985, meeting with Nahama and Dryden; (4) the testimony of Gibson-Smith, BPAE's president, in response to deposition questions concerning the investigation. BPAE maintains that the information sought by the questions is protected by the attorney-client privilege because it was channeled through Attorney Dorey or in Dorey's presence.

NWEC moved respondent court for an order compelling BPAE to produce the documents and testimony. NWEC contended the communications had lost their privileged status because they were obtained in furtherance of

---

[1] If, as BPAE asserts, no report exists, BPAE cannot comply with the court's order requiring its production. BPAE could provide NWEC with an affidavit from Dorey stating that no report exists.

a fraud, citing Evidence Code section 956. NWEC's theory of fraud is that the alleged misrepresentations in the December 23, 1985, letter from BPAE to NWEC were made for the purpose of dissuading NWEC from pursuing its claim against BPAE.

Respondent court granted the motion finding NWEC had made a prima facie showing of fraud so the attorney-client privilege and the work product rule did not apply.

## DISCUSSION

*The "old" discovery act governs this motion.*

The new discovery act, which became operative July 1, 1987, provides that any particular use of a discovery method initiated before July 1, 1987, is governed by preexisting provisions. (Stats. 1987, ch. 86, § 20.) NWEC's motion to compel involved discovery methods initiated before the operative date of the new discovery act. Thus, the "old" act controls the parties' claims in this case.

*Writ review is appropriate.*

■ The appellate court may entertain a petition for extraordinary relief when compulsion to answer a discovery order would violate a privilege. (*Roberts* v. *Superior Court* (1973) 9 Cal.3d 330, 336 [107 Cal.Rptr. 309, 508 P.2d 309].) The discovery order may be prohibited where it is wholly invalid and where, under the circumstances, it constitutes an abuse of the lower court's discretion. (*Dickerson* v. *Superior Court* (1982) 135 Cal.App.3d 93, 98 [185 Cal.Rptr. 97].) Writ review is appropriate in this case.

I. *The Evidence Code section 956 crime-fraud exception does not apply to documents protected by the work product rule.*

■ Evidence Code section 956 codifies the common law rule that the privilege protecting confidential attorney-client communications is lost if the client seeks legal assistance to plan or perpetrate a crime or fraud. (*Glade* v. *Superior Court* (1978) 76 Cal.App.3d 738, 745 [143 Cal.Rptr. 119].) The crime-fraud exception expressly applies to communications ordinarily shielded by the attorney-client privilege. (Evid. Code, § 954.)

The work product rule encompasses a companion but separate document protection.

"The work product of an attorney shall not be discoverable unless the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing his claim or defense or will result in an injustice, and *any writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories shall not be discoverable under any circumstances.*" (Code Civ. Proc., § 2016, subd. (b), italics added.)

The work product rule in California creates for the attorney a qualified privilege against discovery of general work product and an absolute privilege against disclosure of writings containing the attorney's impressions, conclusions, opinions or legal theories.

The purpose of the rule appears in Code of Civil Procedure section 2016, subdivision (h), "It is the policy of this state (i) to preserve the rights of attorneys to prepare cases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of such cases and (ii) to prevent an attorney from taking undue advantage of his adversary's industry or efforts." At the hearing below, the parties assumed the Evidence Code section 956 crime-fraud exception applied to the work product doctrine as well as to the attorney-client privilege protecting documents, and the court so found.

■ The parties relied on federal case law which holds that even an attorney's "opinion" work product can be penetrated under exceptional circumstances. However, federal law is not controlling in California because the federal rule (Fed. Rules Civ.Proc., rule 26(b)(3), 28 U.S.C.A.) differs substantially from the California rule. Rule 26(b)(3) states ". . . the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney . . . concerning the litigation." The federal provision leaves room for argument that the immunity conferred on "hard-core" work product is not absolute, and federal cases so hold. See *Upjohn Co.* v. *United States* (1981) 449 U.S. 383, 400, 401-402 [66 L.Ed.2d 584, 598-599, 101 S.Ct. 677]: "While we are not prepared at this juncture to say that such material is always protected by the work-product rule, we think a far stronger showing of necessity and unavailability . . . would be necessary to compel disclosure"; and *In re Sealed Case* (D.C.Cir. 1982) 676 F.2d 793, 809-810 [219 App.D.C. 195]: Under rule 26 of Federal Rules of Civil Procedure, a party can obtain "opinion" work product upon a showing of "extraordinary justification."

On the other hand, California courts have held that an attorney's opinion work product is absolutely insulated from discovery by virtue of the "shall not be discoverable under any circumstances" language of Code of Civil

Procedure section 2016, subdivision (b). (*Lasky, Haas, Cohler & Munter* v. *Superior Court* (1985) 172 Cal.App.3d 264, 274 [218 Cal.Rptr. 205]; *Aetna Casualty & Surety Co.* v. *Superior Court* (1984) 153 Cal.App.3d 467, 478, 479 [200 Cal.Rptr. 471]; *Fellows* v. *Superior Court* (1980) 108 Cal.App.3d 55, 68 [166 Cal.Rptr. 274].) ■ However, it appears that no California court has addressed the issue whether the crime-fraud exception applies to opinion work product documents.

Evidence Code section 956 refers only to attorney-client privileged matter. There is no similar statute for work product protected documents. The absence of a parallel fraud exception to the work product rule strongly suggests the Legislature did not intend any exceptions.

In *Lasky, Haas, Cohler & Munter* v. *Superior Court, supra,* 172 Cal.App.3d 264, the court discussed the Evidence Code section 958 breach of duty exception to the attorney-client privilege in an action arising from a claimed breach of duty between the client and attorney and the absence of a similar statute concerning work product.

"This absence of a parallel exception, together with the absolute language of the work-product privilege in section 2016, subdivision (b), supports the construction that 'absolute' work product is 'not subject to discovery under any circumstances.'" (172 Cal.App.3d at p. 274.)

By analogy, the absence of a statutory crime-fraud exception to the work product rule implies that the exception does not apply to work product documents. In addition, the language of section 2016, subdivision (b) is absolute. ■ If the statute is clear, the Legislature is presumed to have meant what it said and the plain meaning of the language governs. (*Great Lakes Properties, Inc.* v. *City of El Segundo* (1977) 19 Cal.3d 152, 155 [137 Cal.Rptr. 154, 561 P.2d 244].)[2]

■ Accordingly, respondent court erred in ordering disclosure of documents which reflect the absolute work product of BPAE's attorneys based on the crime-fraud exception of Evidence Code section 956.

---

[2] We note that an early draft of the new discovery act, Code of Civil Procedure section 2018, published in West's California Code of Civil Procedure (1987 compact ed.) at page 666 states, "The provisions of this section shall not be construed to alter, amend, or affect the law in existence at the time this section became effective. However, it is the intent of the Legislature that work product protection applicable to attorneys . . . shall not apply to discovery regarding any cause of action for fraud or any first- or third-party action brought against the insurer." However, the final draft states as follows: "(c) Any writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories shall not be discoverable under any circumstances. [¶] (d) This section is intended to be a restatement of existing law relating to protection of work product. It is not intended to expand or reduce the extent to which work product is discoverable under existing law in any action."

II. *The work product rule applies to the requested documents.*

█ NWEC argues BPAE did not meet its burden of demonstrating the applicability of the work product rule to the documents requested. The party asserting a privilege has the burden of proving the essential elements of the privilege. (*Alpha Beta Co.* v. *Superior Court* (1984) 157 Cal.App.3d 818, 825 [203 Cal.Rptr. 752].) The record reflects that BPAE offered no evidence that the communications contained attorney impressions, opinions or legal theories.[3] However, BPAE consistently argued the documents were work product. NWEC did not challenge that conclusion and the court apparently agreed some documents would be protected by the work product rule. BPAE cannot be faulted for failing to make an adequate evidentiary showing when there was no apparent need to do so.

█ BPAE conceded below that the crime-fraud exception applied to the work product rule as a general proposition. NWEC urges this court to construe BPAE's concession as a waiver of the right to argue on appeal that the crime-fraud exception does not apply to the work product of an attorney. However, a waiver is the intentional relinquishment of a known right. (*Henderson* v. *Drake* (1953) 42 Cal.2d 1, 5 [264 P.2d 921].) BPAE's concession appears to have been the result of an erroneous legal conclusion under which both parties and the court labored rather than an intentional and knowing relinquishment. Given the absence of any California case law discussing the crime-fraud exception in the context of an attorney's work product, the error is understandable. We therefore find no waiver.

BPAE contends that each of the requested communications is absolute work product. It argues that the Bright and Brown and the Dorey writings contain counsel's impressions, opinions, conclusions, legal theories and research. Also, the Brownhill memo is protected to the extent it reflects Attorney Dorey's opinions and theories. Even the Gibson-Smith deposition testimony is work product to the extent the sought-for answers involve the legal opinions and theories contained in the attorney's writings.

*A document does not lose its character as absolute work product when it is delivered to the client in confidence.*

█ A question arises at this point as to whether an attorney's opinion letter or memorandum to a client loses its absolute work product status once the letter or memorandum is delivered in confidence to the client. This

---

[3] BPAE submitted the declaration of Gregory C. Brown with its reply to order to show cause stating the Bright and Brown letter contains his impressions, conclusions, opinions, legal research and theories. However, this declaration was not presented to the court below.

is not a question of waiver of the work product rule by the attorney's act of delivering the document to the client (under the cases, such a communication in confidence does not constitute a waiver) but rather is a question of whether the document loses its character as work product once it is delivered to the client.

The question is relevant in the present case because if the writings containing the attorney's legal opinions and impressions about BPAE's defense to NWEC's claim are outside the statutory definition of work product, then the issue of whether the crime-fraud exception applies to work product becomes moot.

We conclude that the attorney's absolute work product protection continues as to the contents of a writing delivered to a client in confidence. Our dissenting colleague disagrees with this conclusion arguing that this holding produces a result bordering on the absurd and contrary to legislative intent because the writing would be immune from the crime-fraud exception otherwise applicable if it were only an attorney-client communication. As explained below, the dissent's position is contrary to the Legislature's apparent intent. Further, no overriding social benefit compels such a result.

As we understand it, the argument that an attorney's absolute work product consists only of writings in his or her possession may be summarized as follows: The work product rule was designed to protect the attorney's privacy and to enable him to prepare his client's case unhindered by fear that his opinions and theories will be communicated to third parties. Once an opinion writing is delivered to the client, the attorney has surrendered his privacy rights in the writing. He knows that even though the communication is made in confidence, the client may choose to publish or to communicate the contents of the writing to whomsoever the client may choose. Thus, any need for work product protection in the writing ceases upon its delivery to the client. However, because the writing constitutes a confidential communication between the attorney and the client, it is protected by the attorney-client privilege.

These arguments, however, face two major hurdles—first, the explicit language of Code of Civil Procedure section 2016, subdivision (b) (now § 2018, subd. (c)) which defines absolute work product as "*any* writing" that reflects an attorney's impressions, opinions or legal theories.[4] (Italics

---

[4] One writer has opined that the closest we can come to a "workable" definition of work product under the statute is to say that it is "the product of [the attorney's] effort, research, and thought in the preparation of his client's case. It includes the results of his own work, and the work of those employed by him or for him by his client, in investigating both the favorable and unfavorable aspects of the case, the information thus assembled, and the legal theories and plan of strategy developed by the attorney—all as reflected in interviews, state-

added.) The statute does not restrict work product to only those writings in the attorney's possession. Moreover, the statute provides that such a writing is not discoverable "under *any circumstances*." (Italics added.) The sole exception to the literal wording of the statute which the cases have recognized is under the *waiver* doctrine which has been held applicable to the work product rule as well as the attorney-client privilege. (See cases cited in 2 Jefferson, Cal. Evidence Benchbook (2d ed. 1982) § 41.2, pp. 1483, 1485-1486.)

*Legislative intent regarding absolute work product protection.*

 The California Legislature apparently intended by Code of Civil Procedure section 2016, subdivision (b) to give to attorneys broader protection than the federal courts had given to attorneys under *Hickman* v. *Taylor* (1947) 329 U.S. 495 [91 L.Ed. 451, 67 S.Ct. 385]. (See 2 Hogan, Modern Cal. Discovery (3d ed. 1981) § 12.01, pp. 365-369; § 12.15, pp. 441-444; Pruitt, *Lawyers' Work Product* (1962) 37 State Bar J. 228, 232-236; Comment, *California Discovery Since Greyhound*: *Good Cause for Reflection* (1963) 10 UCLA L.Rev. 593, 608; Masterson, *Discovery of Attorney's Work Product Under Section 2031 of the California Code of Civil Procedure* (1963) 10 UCLA L.Rev. 575, 581-582; McCoy, *supra*, 18 Stan.L.Rev. 783, 788-789.) Also, as noted above (see fn. 2, *ante*), an earlier draft of the 1987 discovery act provided that the work product protection should not apply to discovery in fraud actions; however, the Legislature omitted this provision in the final draft of section 2018. While this omission does not indicate a legislative intent to include an opinion writing delivered to a client within the scope of work product, it does reflect a legislative belief that attorney work product protection is of such importance that discovery of the product will not be allowed in third party actions even where a fraud is alleged. Again, this goes beyond the protection afforded attorneys under *Hickman* v. *Taylor, supra,* 329 U.S. 495, and the Federal Rules of Civil Procedure and negates any rational argument that the protection of attorney work product from discovery in actions based on crime or fraud produces an untenable result. Thus, any restriction on the statute's absolute work product definition of "any writing" must come from the Legislature and not from the courts.

The second hurdle to be overcome in holding that the absolute work product privilege is restricted to those opinion writings which remain in the attorney's possession is that it requires an assumption that the Legislature believed the attorney's need for privacy in the writing ceases upon the

---

ments, memoranda, *correspondence,* briefs, and any other writings reflecting the attorney's 'impressions, conclusions, opinions, or legal research or theories,' and in countless other tangible and intangible ways." (McCoy, *California Civil Discovery*: *Work Product of Attorneys* (1966) 18 Stan.L.Rev. 783, 797, italics added, fn. omitted.)

delivery of the writing to the client. However, we read the statute as indicating the contrary intent.

The Legislature presumably intended to protect the attorney's privacy in the opinion writing after its delivery to the client because this would free the attorney from the fear of a subsequent disclosure of the writing to third parties where the client for some reason did not assert the attorney-client privilege to prevent disclosure. In a sense, this legislative purpose furthers the stated policy of preserving the right of attorneys to prepare their cases for trial "with that degree of privacy necessary to . . . investigate not only the favorable but the unfavorable aspects of such cases . . . ." (Code Civ. Proc., § 2016, subd. (h).) It also encourages the attorney to deliver his or her opinions in writing to the client for the client's further consideration rather than merely communicating orally the contents of the writing to the client. This practice strengthens the attorney-client relationship.

*Case law regarding absolute work product protection.*

Although no California case has expressly held that an attorney's opinion writing retains its work product status upon delivery to the client, we note a federal case which so holds. In *Sylgab Steel & Wire Corp.* v. *Imoco-Gateway Corp.* (N.D.Ill. 1974) 62 F.R.D. 454, the United States District Court interpreted Federal Rules of Civil Procedure, rule 26(b)(3) to mean that an opinion letter delivered to a client constitutes the work product of the attorney even though the letter was not protected by the attorney-client privilege. (62 F.R.D. at p. 457; see also Wolfson, *Opinion Work Product— Solving the Dilemma of Compelled Disclosure* (1985) 64 Neb.L.Rev. 248, 258.)

Another federal case holds the delivery of work product documents to "interested" third parties does not constitute a waiver. The case emphasizes the policy differences behind the attorney-client privilege and the work product privilege. In *United States* v. *American Tel. and Tel. Co.* (D.C.Cir. 1980) 642 F.2d 1285 [206 App.D.C. 317], the appellate court reviewed a trial court's discovery order of "database" documents consisting of computerized abstracts of documents, deposition transcripts, and exhibits received by MCI during discovery in earlier antitrust litigation against American Telephone and Telegraph Company (AT&T). MCI's counsel had collected the database and delivered the documents to the United States government for use in the government's action against AT&T. After ruling that MCI had standing to assert a work product property interest in the database, the reviewing court had to decide whether MCI waived its work product privilege when it disclosed the documents to the government. In ruling against a waiver, the court stated, "We do not consider the strict standard of waiver

in the attorney-client privilege context . . . to be appropriate for work product cases. The *attorney-client privilege exists* to protect confidential communications, to assure the client that any statements he makes in seeking legal advice will be kept strictly confidential between him and his attorney; in effect, *to protect the attorney-client relationship.* Any voluntary disclosure by the holder of such a privilege is inconsistent with the confidential relationship and thus waives the privilege.

"By contrast, the *work product privilege* does not exist to protect a confidential relationship, but rather *to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of the opponent.* The purpose of the work product doctrine is to protect information against opposing parties, rather than against all others outside a particular confidential relationship, in order to encourage effective trial preparation. . . . We conclude, then, that *while the mere showing of a voluntary disclosure to a third person will generally suffice to show waiver of the attorney-client privilege, it should not suffice in itself for waiver of the work product privilege.*" (*Id.* at p. 1299, fns. omitted.)

Several California cases have implicitly held that an attorney's opinion writing retains its work product character after delivery of the writing to the client. In *Fellows* v. *Superior Court, supra,* 108 Cal.App.3d 55, plaintiff sued defendant insurance company for damages for bad faith refusal to settle an uninsured motorist claim. Plaintiff had retained attorney A to seek settlement of the claim which defendant then refused to settle. After the claim was determined by arbitration, attorney A turned his file over to the plaintiff who hired another attorney for the bad faith litigation. By discovery motion the defendant sought disclosure of 64 documents in attorney A's file in the possession of plaintiff, the client. Plaintiff asserted the work product rule as to all of the documents. In response, defendant argued that plaintiff had no standing to assert his former attorney's work product privilege even though the work product was in the client's possession. Only the attorney could assert the work product rule because it belonged only to the attorney, citing *Lohman* v. *Superior Court* (1978) 81 Cal.App.3d 90 [146 Cal.Rptr. 171]. Defendant also argued that the work product rule was waived by the attorney's act of turning his file over to his former client and by the client's act of filing a civil action against defendant based on a cause of action different from the uninsured motorist claim involved in the initial action. The trial court ordered production of all of the documents on the sole ground that the attorney's work product privilege automatically terminated at the conclusion of the uninsured motorist dispute and could not be asserted in subsequent litigation between plaintiff and defendant. (*Fellows, supra,* at pp. 59-61.)

*Fellows* holds that the trial judge erred in ordering production of the documents. Although the work product rule was recognized as belonging only to the attorney, the court decided that, similar to the Evidence Code privileges which give persons other than the holder of the privilege the right to assert the privilege, the work product rule may be asserted by a client on behalf of a former attorney who is absent from the litigation. *Fellows* distinguished *Lohman* because in *Lohman* the attorney as the holder of the work product privilege was willing to waive the privilege. *Fellows* also criticized *Lohman* for its "misreading" of *Mack* v. *Superior Court* (1968) 259 Cal.App.2d 7 [66 Cal.Rptr. 280] which held that the client as well as the attorney may claim the privilege. ▮▮▮ *Fellows* correctly pointed out that *Mack* did not state that the client is the holder of the privilege. It only stated that in the attorney's absence the client has standing to assert the privilege on behalf of the attorney. *Mack*'s language to the effect the work product privilege was created in the interest of the client as well as the attorney simply "provides a basis for a judicial interpretation of Code of Civil Procedure section 2016 to permit a client to claim the attorney's work-product privilege whenever the attorney is not present to claim it himself." (*Fellows* v. *Superior Court, supra,* 108 Cal.App.3d at p. 64.) *Fellows*'s reasoning appears to be sound.

In *Mack* v. *Superior Court, supra,* 259 Cal.App.2d 7, the state filed an eminent domain action against petitioners, landowners-defendants. The trial court ordered the petitioners to disclose to the state the details of a real estate appraisal obtained by their former attorney. The writing contained the appraiser's opinion of the fair market value of the property. The petitioners had filed a declaration stating that all of the information obtained by the appraiser was solely and exclusively for the information and eyes of their attorney; it was at all times to be treated as confidential. Moreover, defendants did not intend to call the appraiser at trial. The reviewing court issued a peremptory writ and noted first that the attorney's work product privilege was created for the protection of the client as well as the attorney; hence, there was no reason why a client's declaration asserting facts apparently within the client's personal knowledge, should not be as effective as the attorney's declaration. (259 Cal.App.2d at pp. 9-10.) ▮▮▮ In answer to a contention that the appraisal information cannot be protected from discovery as the attorney's work product, *Mack* acknowledged that Code of Civil Procedure section 2016 does not define "work product" but that the cases in general indicate that material of a derivative character such as diagrams prepared for trial, audit reports, appraisals, and other expert opinions, developed as the result of the initiative of counsel in preparing for trial, are to be protected as work product. Thus, in the interest of allowing the attorney to prepare his case thoroughly by investigating the favorable as well as the unfavorable aspects of the case, i.e., the low appraisal value of

the land, the appraisal information came within the attorney's work product protection. (*Id.* at p. 11.)

■ While the statement that the work product rule was created for the benefit of the client as well as the attorney may be questionable, we cannot quarrel with the *Mack* conclusion that the client may assert the privilege on behalf of the attorney in the attorney's absence. ■ In any event, implicit in the *Mack* holding and the cases cited therein is the conclusion that a writing retains its work product status even though it is not in the attorney's possession and even though its contents may have been communicated to the client.

■ *Kerns Constr. Co.* v. *Superior Court* (1968) 266 Cal.App.2d 405 [72 Cal.Rptr. 74] demonstrates that a writing may be protected by both the work product rule and the attorney-client privilege. That case involved a personal injury action resulting from a gas explosion. During the deposition of the gas company's employee by petitioner Kerns, the employee testified that he had prepared certain investigative reports in connection with the accident for the use of the gas company's attorneys. In preparation for the deposition, the employee reread the reports which he obtained from the attorney. The employee said he could not have given his testimony without having reread the reports. At the close of the testimony the reports were identified and marked for identification by the reporter. At this point the attorney for the gas company objected to the reports being made part of the record on the ground of the attorney-client privilege and "work product." Later, the deposing party moved the trial court for an order requiring the gas company to produce the reports for inspection and copying. The motion was denied. The reviewing court phrased the issues: (1) Were the reports privileged either under the attorney-client privilege or work product, and (2) if there was a privilege, was there a waiver? (*Id.* at pp. 407-409.)

The *Kerns* court answered the work product issue. "If, as claimed, the reports were privileged under the work product rule, the privilege rested with the attorney and was waived by the attorney when he produced the reports to the witness upon which to premise his testimony. The attorney cannot reveal his work product, allow a witness to testify therefrom and then claim work product privilege to prevent the opposing party from viewing the document from which he testified." (266 Cal.App.2d at p. 411.)

The court also concluded the trial court had correctly ruled that the reports were within the attorney-client privilege as a confidential communication by the attorney to the client but that the privilege had been waived when the records were voluntarily furnished to the witness in preparation for his testimony and he testified from them. "The claim of privilege should

have been made at the point when the questions were propounded to the witness which required of the witness a recitation of the material or some of the material contained in the reports." (*Id*. at p. 414.) Thus, *Kerns* shows that a particular writing may be protected by the work product and attorney-client privilege at the same time; the privileges are not mutually exclusive. ■ Further, the writing can be removed from the protective cloak of the privileges only by the waiver doctrine. (See also *Merritt* v. *Superior Court* (1970) 9 Cal.App.3d 721 [88 Cal.Rptr. 337]; *American Mut. Liab. Ins. Co.* v. *Superior Court* (1974) 38 Cal.App.3d 579, 595 [113 Cal.Rptr. 561].)

A case which demonstrates the scope and absoluteness of the attorney work product protection in writings is *Lasky, Haas, Cohler & Munter* v. *Superior Court, supra,* 172 Cal.App.3d 264. There, trust beneficiaries sought discovery of all writings and discussions generated by trustee's counsel about the trustee's activities in the sale of the trust corpus consisting of stock in the Getty Oil Company, and in other alleged proposed stock sales by the trustee. The law firm refused to disclose its writings or oral discussions that it termed its "internal and private uncommunicated work product." The trial court ruled that a client has the right to require his counsel's disclosure of previously uncommunicated attorney work product and ordered the attorney to produce all of his impressions, conclusions, opinions, legal research and theories relating to work undertaken on behalf of the trustee in his capacity as trustee, excluding work done in defending the trustee against charges made against him by the beneficiaries in the underlying proceedings.

The Court of Appeal issued a writ directing the trial court to vacate its disclosure order and to deny discovery of those writings that qualify as absolute work product under Code of Civil Procedure section 2016, subdivision (b). The court first held that the attorney is the sole holder of the work product privilege and may effectively assert it *even as against a client*. (172 Cal.App.3d at p. 278.) The court explained, "Our conclusion is partly supported by the necessary acknowledgment that the additional factor of any third party adversary of the client seeking the work product alters the alignment of conflicting interest that exist solely between attorney and client . . . . This additional factor also adds new considerations as to service of the purposes of the privilege. Although the trust beneficiaries in the underlying case have a fiduciary relationship with the trustee and although they were not opponents of the trustee when the subject work product was generated, they are presently litigation adversaries of the trustee client and thus, in this particular context, are more like than unlike the wholly adverse third party strangers involved in *Fellows, supra,* . . . *Lohman, supra,* . . . and *American Mut. Ins. Co., supra,* . . . Further, there is a critical

distinction between situations where the attorney's unethical withholding of work product would clearly prejudice the interests of his former client and situations where withholding would apparently serve the interests of his present client. As will later be discussed, while the beneficiaries are owed a duty of care by the trustee and trustee's counsel, this duty, and the consequent potential civil liability, does not render the beneficiaries joint clients of the trustee's attorneys." (*Ibid.*)

"There are strong ethical public policy considerations for concluding that the client has an absolute right of access to all work product generated by his attorney in representing the client's interests. In the absence, however, of any statutory exception parallel to that created by Evidence Code section 958 relative to the attorney-client privilege, we are compelled by the absolute language of section 2016, subdivision (b), and the express statement of purpose in subdivision (h), to conclude that the attorney is the intended exclusive holder of the work product privilege and that it may be asserted even against his client in the context of litigation where adversaries of the client seek discovery for use against the client." (172 Cal.App.3d at p. 279.)

The court then reemphasized that it was not considering the "far stronger public policy considerations" involved in discovery where the client seeks his former attorney's work product to prepare his own case against that attorney. (*Ibid.*)

 We conclude from the cited cases that the attorney's absolute work product protection continues as to the contents of a writing delivered to a client in confidence. The protection precludes third parties not representing the client from discovery of the writing. The fact that the client does not object to disclosure of the contents of the writing does not lessen the attorney's need for privacy. The recognition of an attorney's right to assert a work product protection in the contents of a writing after it is delivered to the client strengthens the attorney-client relationship by enabling the attorney to evaluate his client's case and to communicate his opinions to the client without fear that his opinions and theories will thereafter be exposed to the opposing party or to the public in general for criticism or ridicule.

Moreover, insofar as the crime-fraud exception is concerned, we fail to see any social benefit in holding that an attorney's written work product is protected from discovery by third parties while it remains in the attorney's possession but that it is not protected if it is delivered to the client. If this should be the law, attorneys would simply refrain from delivering opinion writings to their clients, which practice would weaken the attorney-client relationship.

■ Thus, the only exception to the absolute work product protection of an attorney's confidential opinion letter to a client is where there has been a waiver of the protection by *the attorney's* voluntary disclosure or consent to disclosure of the writing to a person other than the client who has no interest in maintaining the confidentiality of the contents of the writing. (2 Jefferson, Cal. Evidence Benchbook, *supra,* § 41.2, p. 1486.) A claim of work product may also be waived by failure to make the claim, by tendering certain issues and by conduct between discovery and trial that is inconsistent with such claim. (Cal. Civil Discovery Practice (Cont.Ed.Bar 1975) § 1.39, p. 32.) The present case does not fit within the parameters of the waiver exception because the alleged memorandum of general counsel Dorey and the opinion letter of outside counsel Bright and Brown were delivered only to their client, BPAE. Hence, the writings are entitled to protection as the attorney's work product.

■ However, this court cannot evaluate BPAE's work product assertions because the documents and testimony are not in the record. We will remand the matter to the trial court with directions to determine which documents contain work product. The determination of the work product protection should be made on an item-by-item basis. (*Travelers Ins. Companies* v. *Superior Court* (1983) 143 Cal.App.3d 436, 453 [191 Cal.Rptr. 871].) The remand will require the trial court to conduct an in camera inspection of the documents. (See procedure outlined in *Fellows* v. *Superior Court, supra,* 108 Cal.App.3d at p. 68.) It also will require BPAE to prove the preliminary facts essential to the applicability of the work product rule to each of the documents. (*Alpha Beta Co.* v. *Superior Court, supra,* 157 Cal.App.3d at p. 825.)

III. *The court's findings that NWEC made a prima facie showing of fraud and that BPAE's actions in seeking counsel's services were in perpetration of a fraud are supported by substantial evidence.*

A. *Standard of review.*

■ A trial court's determination of a motion to compel discovery cannot be overturned in the absence of an abuse of discretion. (*Dickerson* v. *Superior Court, supra,* 135 Cal.App.3d 93, 98.) If the privilege does not appear as a matter of law, the appellate court may not disturb the lower court's findings if there is any substantial evidence to support them. (*D. I. Chadbourne, Inc.* v. *Superior Court* (1964) 60 Cal.2d 723, 729 [36 Cal.Rptr. 468, 388 P.2d 700].) The appellate court may not weigh the evidence, resolve conflicts in the evidence, or resolve conflicts in the inferences that can be drawn from the evidence. If there is substantial evidence in favor of the finding, no matter how slight it may appear in comparison with the

contradictory evidence, the finding must be affirmed. (9 Witkin, Cal. Procedure (3d ed. 1985) §§ 278, 282, pp. 289, 294.)

B. *Prima facie showing of fraud.*

To invoke the Evidence Code section 956 exception to the attorney-client privilege, the proponent must make a prima facie showing that the services of the lawyer "were sought or obtained" to enable or to aid anyone to commit or plan to commit a crime or fraud. (Evid. Code, § 956.)[5] BPAE submits the court abused its discretion in finding the exception applied because first, NWEC failed to make a prima facie showing that BPAE was planning or perpetrating a fraud. Specifically, there was no showing of a knowing, material misrepresentation by BPAE or of a reasonable reliance by NWEC. Nor was there a showing of damages suffered by NWEC. Second, even assuming a prima facie showing of fraud was made by the misrepresentations contained in the December 23 letter, NWEC did not establish that the attorney-client communications were sought or obtained to aid in such a scheme or that the communications were factually related to the fraud.

There is little case law in California addressing the nature of a prima facie showing under Evidence Code section 956. According to *Nowell v. Superior Court* (1963) 223 Cal.App.2d 652, 657 [36 Cal.Rptr. 21, 2 A.L.R.3d 853], mere assertion of fraud is insufficient; there must be a showing the fraud has some foundation in fact. *People* v. *Van Gorden* (1964) 226 Cal.App.2d 634, 636-637 [38 Cal.Rptr 265], describes a prima facie case as one which will suffice for proof of a particular fact unless contradicted and overcome by other evidence. In other words, evidence from which reasonable inferences can be drawn to establish the fact asserted, i.e., the fraud.

BPAE submits NWEC must show each element of a fraud cause of action to make a prima facie case—a false representation as to a material fact, knowledge of its falsity, intent to defraud, justifiable reliance and resulting damage. (*Gonsalves* v. *Hodgson* (1951) 38 Cal.2d 91, 100-101 [237 P.2d 656].) Since NWEC was not misled by the allegedly false statements in the December 23 letter, BPAE argues there is no showing of reliance or damages by NWEC. BPAE's argument, however, misses the point. Evidence Code section 956 does not require a completed crime or fraud. It applies to attorney communications sought to enable the client to *plan to commit* a fraud, whether the fraud is successful or not. Moreover, we are

---

[5]Evidence Code section 956 provides: "There is no privilege under this article if the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit a crime or a fraud."

not reviewing the merits of a fraud cause of action (none of the causes of action allege a fraud) but rather we are reviewing the merits of a *discovery order* to determine if NWEC will have access to communications between BPAE and its attorneys to aid NWEC in proving its causes of action. Without passing judgment in any way on the truth or falsity of the fraud allegations, it is entirely possible that BPAE could have planned to commit a fraud when it investigated and sought legal advice from its attorneys on NWEC's claim in November 1985, i.e., that BPAE intended to use the attorneys' advice to avoid liability to NWEC by falsely representing the facts concerning the use of NWEC's confidential data in putting together the Tenneco deal. If this is shown, then BPAE has forfeited the benefits of the attorney-client privilege for discovery purposes even though NWEC has not shown at this stage of the proceedings that it relied on and suffered damages from the misrepresentations contained in the December 23 letter.

We conclude that because section 956 applies where an attorney's services are sought to enable a party to plan to commit a fraud, the proponent of the exception need only to prove a false representation of a material fact, knowledge of its falsity, intent to deceive and the right to rely. (This means, of course, that a negligent fraud under Civil Code sections 1572 and 1710 will not suffice.)

■ We turn now to an analysis of four of the alleged misstatements in the December 23 letter. The first statement we analyze reads: "The only proposals for BPAE/NWEC joint ventures that were considered by BPAE were your suggestions for participation in Rosedale/Tejon Ranch/Del Valle Development Limited Partnerships and the Arroyo Hondo and East English Colony exploration ventures."

NWEC presented evidence at the hearing that documents received from BPAE in response to NWEC's requests to produce referred to three other prospects identified by NWEC: Old River, East Paloma Nose and East San Emidio Nose. In addition, the documents showed BPAE had prepared financial analyses of these prospects. The confidential maps and documents which were returned to NWEC were cut up, pasted, colored, marked up and annotated. BPAE did not explain the alterations to NWEC. Also, Gibson-Smith admitted BPAE was aware that Bellevue Deep and East Paloma Nose prospects were substantially within land encompassed by the BPAE/Tenneco agreement. Moreover, Hubbard, a BPAE geologist, prepared a memo for corporate consideration which contained a map with an area outlined that Hubbard claimed Rogers (a BPAE employee) identified for exploration. The area outlined is substantially the same as the area outlined and recommended on the NWEC maps. Nahama pointed out that

the prospects not mentioned in the December 23 letter were in the Tenneco land area while the listed prospects were not in that area.

BPAE responds that the other prospects were not mentioned because BPAE did not view them as promising leads. Moreover, Nahama was aware of the acreage encompassed in the BPAE/Tenneco agreement because he was shown maps indicating that area at the November 27, 1985, meeting. Thus, NWEC could not reasonably have relied on the omissions in the December 23, 1985, letter.

An indispensable element of fraud is a right to rely on the misrepresentation alleged. (*Wilhelm* v. *Pray, Price, Williams & Russell* (1986) 186 Cal.App.3d 1324, 1332 [231 Cal.Rptr. 355].) If a party knows the true facts, he cannot justifiably rely on the alleged misrepresentations. (*Chavez* v. *Citizens for a Fair Farm Labor Law* (1978) 84 Cal.App.3d 77, 80 [148 Cal.Rptr. 278].) Once he viewed the maps, Nahama no doubt knew which of his prospects were included in the Tenneco exploration agreement. However, he did not know what prospects BPAE "considered" until he viewed the returned maps. Nor could he know that Hubbard had considered and concluded that Nahama's Old River prospects were "very attractive."

The court could reasonably infer from this evidence that BPAE had "considered" and "evaluated" the prospects it omitted from the letter when it analyzed them in its memoranda to corporate officials and when it cut up, marked up and annotated maps with the omitted prospects on them. This evidence supports the conclusion that BPAE intended to deceive NWEC into believing that NWEC's confidential information had nothing to do with the Tenneco agreement. It constitutes a prima facie showing the letter was an attempt to defraud NWEC and to dissuade it from pursuing its claims.

The next statement we analyze reads: "After we declined your suggestions for the joint ventures referred to above, BPAE determined to focus their on-shore California exploration efforts on the Stevens Sand within the Bakersfield arch area. The major landowner in this area is Tenneco. Accordingly, BPAE contacted Tenneco . . . ."

NWEC interprets the paragraph to represent that BPAE decided to go to Tenneco only after it had rejected NWEC's proposals and only as a logical extension of Tenneco's land position and the 33,000-acre proposal. NWEC claims the statement is "a lie." Brownhill admits NWEC introduced BPAE to Tenneco, and Gibson-Smith acknowledged that BPAE and NWEC were both present at meetings with Tenneco. Finally, Richard Hubbard, a BPAE employee, admitted the Tenneco opportunity first arose during the Bakersfield meeting which was arranged by NWEC.

BPAE argues that the statement is not a misrepresentation. First, the letter does not say BPAE first contacted Tenneco after it rejected NWEC's proposal. The letter does not admit the NWEC introduction but it does not deny it either. Second, if NWEC was present at the meetings, it could not reasonably rely on BPAE's statements.

NWEC has the better argument. The court could rationally infer from this statement that BPAE represented it approached Tenneco and decided to enter the Tenneco exploration agreement without the use of any of NWEC's confidential information or help. That representation is belied by documents produced by BPAE after the suit was filed. For example, the Hubbard memo to the London affiliate states: "TENNECO FEE LAND FARM-IN [¶] This possibility came directly from the Rodgers/Eames visit to Bakersfield [the NWEC-BPAE meeting]. We explained the importance of the Exploration topside element in any deal to BPAE and Nahama-Weagant produced a very attractive Stockdale South look-alike prospect (Old River) from their inventory which lies in Tenneco land. Tenneco are willing to consider a farm-in offer which is currently under discussion between Nahama-Weagant and Tenneco. Rodgers will be an observer at the Tenneco technical show and tell on Thursday. Tenneco offer attached and we understand that Tenneco do not know about this attractive Stevens play which has been identified on their land by Nahama-Weagant. Reserves could be as high as 50 million barrels at a risk of one in five." This evidence supports the trial court's finding of a fraud.

The third statement which we examine reads: "To my knowledge, the only possible relationship between our 75,000 acre exploration venture with Tenneco and the BPAE/NWEC discussions is that a portion of a prospect which you believe exists and which you mentioned to us is located within the 33,000 acre land block which Tenneco offered to the industry. Because the 33,000 acre land block is included in our 75,000 acre exploration venture, several hundred of the 75,000 acres cover a part of an area which you had earlier indicated was of potential interest to NWEC. It seems to me that you have concluded that this incidental overlap of several hundred acres of land that were already on offer to the industry by Tenneco provides a sufficient basis to require your participation in our Tenneco Exploration venture."

NWEC finds these statements false because evidence shows that all or part of five prospects, not one, are within the BPAE/Tenneco land area. Brownhill and Gibson-Smith now admit the area includes more than one prospect identified by NWEC.

BPAE responds that Brownhill cannot remember what he knew when he wrote the letter, and NWEC has not shown reliance. Nahama testified he

was shown maps depicting the Tenneco/BPAE lands during the November 27 meeting. Thus, he was aware of the relationship between the prospects identified by NWEC and the land encompassed in the BPAE/Tenneco agreement and had concluded in his own mind the overlap was not incidental before the December 23, 1985, letter was sent.

BPAE is correct. These statements do not support a finding of fraud except to the extent they bolster the misrepresentations discussed earlier.

The final statement which NWEC contends is a misrepresentation states: "At the November 27th meeting, you raised the issue of the maps you loaned BPAE during the discussions concerning participation in your [five named] exploration ventures. The failure to return these maps to you was an oversight on our part for which we apologize. I am returning them to you today under separate cover, and assure you that we have not retained any copies."

NWEC claims this statement is false because the maps also included prospects contained in the BPAE/Tenneco area, which were not mentioned in the December 23 letter. In addition, in a recent document produced by BPAE, NWEC found copies of 11 different maps which BPAE had failed to return.

BPAE answers that Brownhill was not aware precisely of which maps NWEC had loaned BPAE. Moreover, the fact some copies of the maps were retained (inadvertently, BPAE urges) is not material in light of the fact the BPAE/Tenneco agreement was final months earlier.

The only untrue statement is that no copies of the maps were retained. That misrepresentation may or may not be material. The maps might remain useful for directing explorations even after the agreement was finalized.

C. *The relationship of the fraudulent letter to the attorney-client communications.*

 BPAE contends that even if the December 23 letter supports a finding of fraud there is insufficient evidence that BPAE obtained the attorney-client communications in furtherance of the fraudulent scheme. BPAE cites *Nowell* v. *Superior Court, supra,* 223 Cal.App.2d at page 657, for the proposition that NWEC must make a prima facie showing that BPAE's purpose in seeking the attorney-client communication was to further a fraud. Again, we have found no California case which addresses the necessary link between the attorney-client communication and the planned

or perpetrated crime or fraud. The parties rely on federal law. The cases, while not controlling, are instructive.

NWEC relies on *In re A.H. Robins Co., Inc.* (D.Kan. 1985) 107 F.R.D. 2 and *In re Sealed Case, supra,* 676 F.2d 793. The *A.H. Robins* case involved a discovery motion in the multi-district Dalkon Shield litigation. Plaintiffs sought production of five memoranda drafted by or under the supervision of its general counsel or attorneys retained by Robins. Plaintiffs contended that if the memoranda were protected they lost their privileged status because of the crime or fraud exception under Kansas law. The Kansas statute, which is almost identical to the California statute, provided the attorney-client privilege was lost if legal services were "sought or obtained to enable or aid the commission or planning of a crime or tort." (*Id.* at p. 8.)

The court concluded Robins had engaged in a scheme to conceal significant problems associated with the device in order to encourage sales. Plaintiffs made a prima facie showing that Robins attempted to develop evidence which misrepresented the safety of the Dalkon Shield and attempted, with the assistance of counsel, to devise strategies to lessen Robins's liability for resulting injuries. (*Id.* at pp. 14-15.) The court noted the statutory language did not require a fraudulent plan prior to seeking the attorney's advice. The exception applied even if the crime or fraud "evolved from" the advice. (*Id.* at p. 9.)

*Pritchard-Keang Nam Corp.* v. *Jaworski* (8th Cir. 1984) 751 F.2d 277, reached the opposite conclusion and held that the crime-fraud exception did not apply unless the propounding party made a prima facie showing that the " 'client was engaged in or planning a criminal or fraudulent scheme *when he sought the advice of counsel* to further the scheme.' " (*Id.* at p. 281, italics added.)

NWEC asserts *Pritchard* is not controlling because the statute at issue in that case was substantially different than California Evidence Code section 956. The Missouri statute[6] and the Eighth Circuit rule expressly required that the *purpose* of the attorney-client communication was the commission of a crime or fraud. By contrast, the language of section 956 is much broader. There is no privilege if the attorney's services "were sought or obtained to enable or aid anyone to commit or plan to commit a crime or a fraud."

NWEC's position is supported by *In re Sealed Case, supra,* 676 F.2d 793. A "Fortune 500" corporation had come under investigation by a grand jury

---

[6] The Missouri crime-fraud exception statute stated a person cannot " 'employ an attorney *for the purpose of* aiding and abetting him in the commission of a future crime or fraud.' " (*Id.* at p. 281, italics added.)

for possible conspiracy to defraud the government and obstruction of justice. The grand jury subpoenaed eight items which the company maintained were protected by attorney-client or work product privileges. Document No. 2 was a memo written by Y, the company's general counsel, to preserve his recollection of a series of meetings at which several of the corporation's officers had discussed the company's dealings with X (who had purportedly channeled bribes to foreign officials) and an allegation of illegal campaign contribution reimbursements by the company. Document No. 3 was a typed memorandum regarding the substance of a telephone conversation between Y and two of the company's outside counsel. The three lawyers discussed X and the campaign contribution issue. (*Id.* at p. 805.)

The record established a substantial possibility that the company's chairman and other senior officers conspired to bribe an official in one foreign country and to make illegal corporate contributions to political campaigns. (*Id.* at p. 813.) The court noted that a specific showing of the client's intent in consulting the attorney is not required. To require it would almost certainly lead to either a kind of "mini trial" or a near evisceration of the exception. A finding that the privileged material "reasonably relates" to the subject matter of the crime or fraud should suffice. (*Id.* at p. 815.)

The court concluded the record more than satisfied the prima facie showing requirement. Documents 2 and 3 related directly to the subject matter of the possible crime or fraud. The documents primarily concerned the state of knowledge of various company officers about the illegal payments. Given the substantial possibility that some of those officers had lied to the grand jury or in an affidavit submitted to the IRS after receiving Y's advice, the two documents had to be produced before the grand jury. (*Id.* at pp. 815-816.)

*In re Sealed Case* (D.C.Cir. 1985) 754 F.2d 395, 399-400 [244 App.D.C. 11], stated a mere coincidence in time between the alleged acts of misconduct and the period of attorney representation, without more, is insufficient to make the necessary prima facie showing. (*Id.* at pp. 401-402.) But in that case, the evidence supported the reasonable inference that the attorney's representation and advice assisted Synanon in carrying out its fraudulent scheme to destroy incriminating records. (*Id.* at p. 402.)

In this case, NWEC proved that the BPAE communications with counsel were made as part of the investigation that resulted in the fraudulent December 23 letter. This established the reasonable relationship between the subject matter of the fraud and the privileged communications. (See *In re Sealed Case, supra,* 676 F.2d 793.) Mr. Dorey, BPAE's corporate counsel, was made a member of the team investigating Nahama's claims to which the December 23 letter responded. Mr. Dorey was always present when

Brownhill reported on the investigation to Gibson-Smith so Gibson-Smith's knowledge about the investigation came in the context of attorney-client communications, and Gibson-Smith reviewed and approved the December 23 letter before it was sent to NWEC. Furthermore, the Bright and Brown report was a "comment" on the investigation. This evidence permits a reasonable inference that the fraudulent scheme reflected in the December 23 letter evolved from the privileged communication. (*A.H. Robins Co., Inc., supra,* 107 F.R.D.2d 2, 9.)

We conclude therefore that NWEC made a prima facie showing that BPAE sought its attorney's services to assist in the commission or planning of a fraud by making misrepresentations of fact aimed at discouraging NWEC from pursuing its claims. We emphasize, again, that our holding is not to be construed in any way as an indication that the fraud inferences are true—only that they exist from the present record.

BPAE complains that the trial court did not make an express finding in this regard. Hence, the order—and the evidence—is inadequate to support application of Evidence Code section 956. BPAE is correct to a point. However, the court's finding that NWEC "made a prima facie showing of fraud and that BPAE's actions were in contemplation and perpetration of a continuing fraud" can be construed to include an implied finding the attorney-client communications were related to the fraud. Since the lawyers were closely involved in the investigation, the court could reasonably infer that counsel was aware of facts giving rise to the fraud.

Finally, if the crime-fraud exception does apply, the parties disagree on the extent to which the privilege is lost once the exception is established. In *In re A.H. Robins Co., Inc., supra,* 107 F.R.D. 2, the court held that a prima facie showing of fraud cannot open defendant's files or give plaintiffs carte blanche with respect to attorney-client communications. The documents in question must have a reasonable relation to the ongoing fraud to be discoverable under the crime-fraud exception. (*Id.* at p. 15.) That is a reasonable rule for the California courts to adopt.

Its application should not present a problem in this case. By BPAE's own admission, the Bright and Brown letter is a comment on the investigation. The Brownhill report summarizes Brownhill's recollection of the meeting between NWEC and BPAE at which BPAE's position—which was ultimately set out in the December 23 letter—was discussed. Finally, Gibson-Smith's deposition testimony relates to his state of mind and BPAE's position regarding the letter. The documents and communications apparently bear a reasonable relation to the alleged fraud. However, if BPAE honestly believes one or more of the documents contain clearly unrelated material,

the documents could be reviewed in camera and the irrelevant matter excised.

IV. *The court's order requiring Gibson-Smith to respond to "otherwise appropriate questions" is vague and overbroad.*

 The court ordered Mr. Gibson-Smith to reappear for deposition and to respond fully to "otherwise appropriate questions concerning his knowledge of the investigation, without regard to whether such knowledge was obtained through or in the presence of counsel for BPAE."

BPAE did not object to the order on vagueness grounds until this court in its order to show cause asked the parties to brief the vagueness/overbreadth issues. BPAE now contends the order is vague because it does not apprise Gibson-Smith of the questions he is compelled to answer. The order is also overbroad because it requires him to answer questions concerning his knowledge of the investigation, rather than his knowledge of the preparation of the fraudulent letter.

The order is vague because NWEC did not comply with California Rules of Court, rule 335. That rule requires a party seeking further responses to questions propounded at a deposition to set forth *each question* to which a further response is requested, the response given and the factual and legal reasons for compelling it. There is no sanction specified for failure to comply with the rule; however, *Neary* v. *Regents of University of California* (1986) 185 Cal.App.3d 1136, 1145 [230 Cal.Rptr. 281] approved a trial court's "dropping" of a motion upon moving party's failure to separately set out questions.

NWEC responds that BPAE is estopped from complaining about NWEC's failure to set out specific questions to which further response was requested. The parties stipulated at Mr. Gibson-Smith's deposition: (a) all questions posed by NWEC concerning Gibson-Smith's knowledge of the investigation included a request for information learned from counsel; (b) Mr. Gibson-Smith was instructed not to answer such questions to the extent he learned the information from or in the presence of counsel; and (c) all formalities were waived so that NWEC could make a motion to compel. Second, BPAE submitted its own proposed order which contained language identical to that in the final order regarding Gibson-Smith's response to deposition questions.

Both parties contributed to the vagueness problem, NWEC by not delineating questions and BPAE by not objecting to NWEC's failure to comply with rule 335 and later acquiescing to the vague order.

The order is also overbroad. As discussed under issue III, above, once the crime-fraud exception is found to apply, communications reasonably related to the fraud are discoverable. (*In re A.H. Robins Co., Inc., supra,* 107 F.R.D. at p. 15; *In re Sealed Case, supra,* 754 F.2d 395, 402-403.) There was no showing the investigation itself was fraudulent. Thus, under the "reasonably related" rule, only Gibson-Smith's knowledge related to the fraud—the representations made in the December 23, 1985, letter—is discoverable.

Let a writ of prohibition issue restraining respondent court from enforcing its discovery order as to documents protected by the attorney work product rule and requiring further responses by Mr. Gibson-Smith to deposition questions pertaining to the work product.

The matter is remanded to respondent court for an in camera hearing to determine the work product portion of each of the documents which shall not be discoverable. Real party in interest NWEC will then be free to bring a motion to compel further answers by Gibson-Smith to specified deposition questions concerning any part of the documents not protected by the work product rule.

In all other respects, the discovery order is affirmed.

Martin, J., concurred.

**BEST, J.,** Concurring and Dissenting.—I am unable to agree with certain of the conclusions reached by the majority concerning the attorney's work product rule codified in the last paragraph of subdivision (b) of former Code of Civil Procedure section 2016 (now Code Civ. Proc., § 2018). (See Stats. 1987, ch. 86, § 3.5, eff. July 2, 1987, operative July 1, 1987.) The majority holds that an attorney's letter or memorandum opinion which contains the attorney's impressions, conclusions, opinions, or legal research retains its absolute work product status after the letter or memorandum is delivered to the client in confidence. In my view this holding is historically unfounded, legally unsound and would judicially repeal the exceptions to the attorney-client privilege insofar as written confidential communications from the attorney to the client are concerned. I will attempt to demonstrate.

The attorney's work product rule has as its historical base the opinion of the United States Supreme Court in *Hickman* v. *Taylor* (1947) 329 U.S. 495 [91 L.Ed. 451, 67 S.Ct. 385]. There the plaintiff served interrogatories seeking production of both oral and written statements obtained by defendant's counsel from witnesses. Although recognizing that the material was not protected by the attorney-client privilege, the court noted: "Proper preparation of a client's case demands that he [the attorney] assemble information, sift what he considers to be relevant from the irrelevant facts,

prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways— aptly though roughly termed . . . the 'work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served." (*Id.* at p. 511 [91 L.Ed. at p. 462].)

In *Greyhound Corp.* v. *Superior Court* (1961) 56 Cal.2d 355 [15 Cal.Rptr. 90, 364 P.2d 266], the California Supreme Court rejected the contention that an attorney's work product was absolutely immune from normal discovery, but recognized that in proper cases a discretionary protective order could issue to deny discovery "when disclosure of the attorney's efforts, opinions, conclusions or theories would be against public policy . . . or would be eminently unfair or unjust, or would impose an undue burden." (*Id.* at p. 401; see *Trade Center Properties, Inc.* v. *Superior Court* (1960) 185 Cal.App.2d 409, 411 [8 Cal.Rptr. 345]; see also *Suezaki* v. *Superior Court* (1962) 58 Cal.2d 166, 177-178 [23 Cal.Rptr. 368, 373 P.2d 432, 95 A.L.R.2d 1073]; *San Diego Professional Assn.* v. *Superior Court* (1962) 58 Cal.2d 194, 204-205 [23 Cal.Rptr. 384, 373 P.2d 448, 97 A.L.R.2d 761]; *Oceanside Union School Dist.* v. *Superior Court* (1962) 58 Cal.2d 180, 192-193 [23 Cal.Rptr. 375, 373 P.2d 439].)

The attorney's work product rule received statutory recognition in California by the 1963 amendment to Code of Civil Procedure section 2016 which added the following paragraph to subdivision (b): "The work product of any attorney shall not be discoverable unless the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing his claim or defense or will result in an injustice, and any *writing* that reflects an attorney's impressions, conclusions, opinions, or legal research or theories *shall not be discoverable under any circumstances.*" (Italics added.)

"Work product" is not otherwise defined in the statute.

At the same time subdivision (g) (later amended to subdivision (h)) was added to Code of Civil Procedure section 2016, as follows: "It is the policy of this state (i) to preserve the rights of attorneys to prepare cases for trial

with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of such cases and (ii) to prevent an attorney from taking undue advantage of his adversary's industry or efforts."

In *Fellows* v. *Superior Court* (1980) 108 Cal.App.3d 55 [166 Cal.Rptr. 274], plaintiffs filed a complaint against Allstate Insurance Company and several individuals for damages based on an alleged bad faith refusal of defendants to settle plaintiffs' uninsured motorist claims. Plaintiffs had been represented by Donald Kottler during the pendency of the uninsured motorist claims. Attorney Kottler had delivered his legal file to plaintiffs for use in the present litigation. Defendants sought production of some 64 documents contained in the Kottler legal file and which had been identified and described in answers to interrogatories. Plaintiffs contended that most of these documents fell within the absolute portion of the attorney's work product privilege. The appellate court, in an opinion authored by Justice Jefferson, held, in my view correctly, that the trial court erred in holding the attorney's work product privilege automatically terminated at the conclusion of the uninsured motorist claims matter and could not be asserted in the latter action between plaintiffs and defendants. In discussing defendants' assertion that plaintiffs had no standing to assert the attorney's work product privilege for documents belonging to the attorney but in plaintiffs' possession, the opinion agreed with the holding in *Lohman* v. *Superior Court* (1978) 81 Cal.App.3d 90 [146 Cal.Rptr. 171] that since the attorney is the exclusive holder of the work product privilege, if the attorney wishes to waive the privilege the client cannot object. However, the court in *Fellows* went on to hold, incorrectly in my view, as follows: "Here plaintiffs were present, in possession of the documents belonging to their former attorney, Kottler, and, in his *absence,* had standing to claim the attorney's work-product privilege on his behalf. (See Jefferson, Cal. Evidence Benchbook (1972), The Attorney's Work-Product Privilege, § 41.1, p. 702.) This judicial interpretation of the attorney's work-product privilege makes this privilege comparable to the rules governing the various privileges set forth in the Evidence Code. Thus, under the lawyer-client privilege, the client is the holder of the privilege but the lawyer is also entitled to claim the privilege for the client (Evid. Code, §§ 953, 954); under the physician-patient privilege, the patient is the holder of the privilege but the physician is entitled to claim the privilege for the patient (Evid. Code, §§ 993, 994); and under the psychotherapist-patient privilege, the patient is the holder of the privilege but the psychotherapist is entitled to claim the privilege for the patient (Evid. Code, §§ 1013, 1014)." (*Fellows* v. *Superior Court, supra,* 108 Cal.App.3d at p. 65.)

It is interesting to note that the only authority cited for the holding that the client had standing to claim the work product privilege on the attorney's

behalf was Justice Jefferson's own treatise which, in turn, relied solely upon *Mack* v. *Superior Court* (1968) 259 Cal.App.2d 7 [66 Cal.Rptr. 280]. In *Mack,* the question of the client's standing to claim the work product privilege on behalf of the attorney was not directly addressed. There, interrogatories directed to the client sought information about a real estate appraisal obtained by the client's former attorney and communicated to the client. The client objected, claiming the protection of the attorney's work product privilege. The issue in *Mack* was stated on page 10 of the opinion as follows: "Real party in interest first contends that the declaration presented to respondent court by petitioners is hearsay and that since petitioners' former attorney did not file a declaration in support of their contention there is no competent evidence to show that the work product privilege applies."

The court first held that the subject declaration, except for one immaterial sentence, was not hearsay. The court then added, without citation of authority, "The work product privilege was created for the protection of the client as well as the attorney and there is no reason why a party's declaration, asserting facts apparently within personal knowledge, should not be as effective as a declaration by the attorney." (*Mack* v. *Superior Court, supra,* 259 Cal.App.2d at p. 10.)

I cannot agree with the statement that "The work product privilege was created for the protection of the client as well as the attorney" and believe the following observation of the court in *Lohman* v. *Superior Court, supra,* 81 Cal.App.3d at page 101 to be the correct one: "We do not agree with the reasoning in *Mack.* Starting with *Hickman* v. *Taylor, supra,* 329 U.S. 495, and ending with Code of Civil Procedure section 2016, subdivision (g), it appears that the whole thrust of the work product privilege was to provide a qualified[5] privilege for the attorney preparing a case for trial and protecting the fruits of his labor from discovery. Certainly, if the Legislature had intended to afford the client some measure of privilege over and beyond that encompassed in the attorney-client privilege, it would have been relatively simple to so state in Code of Civil Procedure section 2016, subdivision (g).

". . . Finally, in passing, we observe that the decision in *Mack* may well have been correct in that the questions asked of the client were designed to bring out matters communicated by counsel to client in the course of the attorney-client relationship and protected by the attorney-client privilege."

The holding in *Fellows* v. *Superior Court, supra,* cannot be explained by Justice Jefferson's emphasizing that the legal file still belonged to Attorney

---

[5]Absolute as to certain writings, see Code of Civil Procedure section 2016, subdivision (b)."

Kottler, thereby implying that he had merely entrusted the file to his former clients for purposes of the bad faith action. For example, defendants there contended that the filing by plaintiffs of the action against defendants which arose out of plaintiffs' uninsured motorist dispute with defendants in which plaintiffs were represented by Kottler should be held to constitute a waiver of Kottler's work product privilege. The opinion states, "Certainly Kottler's action in surrendering his file to plaintiffs, his former clients, would evidence a consent for plaintiffs to waive the privilege if they so desired. But authorization by the attorney to his client to waive the privilege cannot be construed as a waiver in and of itself." (*Fellows* v. *Superior Court, supra,* 108 Cal.App.3d at p. 65.) Although the *Fellows* court would by judicial interpretation make the attorney's work product privilege comparable to the Evidence Code privileges, under the Evidence Code the lawyer, physician or psychotherapist is *required* to claim the privilege in the absence of the holder and *may not* assert the privilege if the holder has consented to disclosure of the confidential communication or has waived the privilege. Once the holder of the privilege—the client or the patient—has consented to disclosure or has waived the privilege, the lawyer, physician, or psychotherapist, as the case may be, cannot claim the privilege for their own protection.

It seems clear that the purpose of the absolute portion of the attorney's work product rule is to protect from discovery the industry and efforts of the attorney as reflected in his or her work papers in which he or she has reduced to writing his or her "impressions, conclusions, opinions, or legal research or theories" in the preparation of the client's case. I have been unable to find any indication that it was ever intended to apply to the written product furnished to the client, which, upon delivery to the client, belongs to the client. Nor does logic or necessity require the extension of the attorney's work product rule to such material. If the written product is a contract, lease or other document not intended to be confidential, no protection from discovery is needed or desired. If the finished product consists of a letter or legal memorandum intended to be confidential, the writing is a confidential communication within the attorney-client privilege (Evid. Code, § 952) and falls under the protective cloak of that privilege. The holding of the majority in this case would bestow upon writings of the latter type a dual character—both attorney's work product and a confidential communication within the attorney-client privilege. Assuming the majority's holding that the crime-fraud exception (Evid. Code, § 956) does not apply to the attorney's work product to be correct, and I believe it is, the exception would never be applicable when the confidential communication from attorney to client was in writing but it would be applicable if the communication was simply oral; and the exception would still apply to both written and oral confidential communications from the client to the attor-

ney. If the confidential communication from the attorney to the client was in writing, and under the present holding work product absolutely privileged from discovery, would the remaining Evidence Code exceptions likewise be inapplicable (Evid. Code, § 957—parties claiming through a deceased client; § 958—breach of duty arising out of lawyer-client relationship; § 959—lawyer as attesting witness; § 960—intention of deceased client concerning writing affecting property; § 961—validity of writing affecting property interest; and § 962—joint clients)?

If such writings were possessed of a dual character (both attorney's work product falling within the absolute portion of the rule *and* a confidential communication within the attorney-client privilege), logic would dictate that these exceptions would be inapplicable to the attorney's work product and preclude discovery of the contents even though discovery would be possible if the writings were only confidential communications within the attorney-client privilege.

I submit that such a result would not only be contrary to the Legislature's intent but border upon the absurd.

Accordingly, I would hold that none of the communications sought to be discovered constituted attorney's work product within the meaning of former Code of Civil Procedure section 2016, subdivision (b). I concur in the holding of the majority with reference to the crime-fraud exception to the attorney-client privilege (Evid. Code, § 956) and agree that a sufficient prima facie showing was made to support its application. I also concur in the majority holding that the trial court's order requiring Mr. Gibson-Smith to reappear for deposition and to respond fully to "otherwise appropriate questions" is vague and overbroad.