Filed 2/14/22  P. v. Ochoa CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>MIKE FRANK OCHOA,<br><br>    Defendant and Appellant. | G059399<br><br>(Super. Ct. No. 02WF0395)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Kimberly Menninger, Judge.  Affirmed.

Nancy J. King, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, Alan Amann and Marvin E. Mizell, Deputy Attorneys General, for Plaintiff and Respondent.

*          *          *

Mike Frank Ochoa appeals from the trial court's denial of his petition for resentencing under Penal Code section 1170.95.[1] Ochoa, Gerald Pleshe, and the woman with whom Pleshe was having an affair, Candace Lynn Restivo, were convicted in separate jury trials of murdering Pleshe's wife, Paula Joy Pleshe, early on the morning of July 14, 1981.[2] A jury found Ochoa guilty of first degree murder and found true the special circumstances allegations that he committed the murder for financial gain and by means of lying in wait. (*People v. Ochoa* (Nov. 29, 2006, G035059) [nonpub. opn.] (*Ochoa*).)

The record shows the jury instructions did not provide for a conviction based on a theory of natural and probable consequences; instead, the jury could find Ochoa guilty only if he conspired to commit the murder or directly aided and abetted the offense. On direct appeal, a panel of this court rejected Ochoa's challenge to the sufficiency of the evidence to support his conviction and the special circumstance findings. (*Ochoa*, *supra*, G035059.) The jury was instructed it could find the special circumstance allegations true only if it found beyond a reasonable doubt that Ochoa acted as a coconspirator in the murder *with the intent to kill* the victim or harbored that intent in directly aiding and abetting her slaying. (CALJIC No. 8.80.) This record establishes that the jury found Ochoa harbored a personal intent to kill; he is therefore ineligible for section 1170.95 resentencing. We affirm the trial court's denial of his petition.

## FACTUAL AND PROCEDURAL BACKGROUND

As recently confirmed by our Supreme Court, "the trial court may look at the record of conviction after [as here] the appointment of counsel to determine whether a

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

[2]     We refer to Paula hereafter by her first name to distinguish her from her husband and, in doing so, intend no disrespect to the deceased.

petitioner has made a prima facie case for section 1170.95 relief" (*People v. Lewis* (2021) 11 Cal.5th 952, 971 (*Lewis*)), and "[a]ppellate opinions . . . are generally considered to be part of the record of conviction" (*id.* at p. 972). The facts relevant to this appeal can therefore best be summarized by quoting excerpts from this court's prior opinion in Ochoa's direct appeal. (*Ochoa*, *supra*, G035059.)

"In February 1981, Paula discovered Pleshe was carrying on an affair with Restivo. [Ochoa] worked for an electrical equipment manufacturer named R.S.E. Sierra (R.S.E.). He was an acquaintance of Restivo who also worked for R.S.E." (*Ochoa*, *supra*, G035059.)

"The circumstances of the homicide preclude any suggestion Paula's murder was merely a crime of opportunity or that the perpetrators were motivated by greed or sexual desire. . . . The parties stipulated that Paula told Pleshe to move out of the condominium by August 1[, 1981]. Pleshe's coworker testified to his prior critical comments about Paula and his ability to 'hire a Mexican . . . to kill someone.' An eyewitness observed a vehicle occupied by two Latino men park near the condominium early on the morning of the murder. One man left the car, walking down an adjacent alley. Shortly thereafter, the witness heard Paula scream and then saw the same man run back to the vehicle with blood on his shirt. The man jumped into the car, which then hurriedly left the area. Physical evidence at the crime scene reflected the perpetrator hid next to the walkway Paula used to reach her car. The killer did not take Paula's valuables, and there was no evidence she had been sexually assaulted." (*Ochoa*, *supra*, G035059.)

As noted in our prior opinion, Ochoa on appeal "concede[d] there was evidence he participated 'in [an] original conspiracy' to kill Paula, but argues '[t]here was no evidence' of his 'involvement in this case . . . after his failed attempt to line up Ruiz [an acquaintance with gang ties,] for the crime.'" (*Ochoa*, *supra*, G035059.)

3

"[Ochoa's] claim there was no evidence tying him to Paula's murder runs afoul of the general principles of appellate review." (*Ochoa*, *supra*, G035059.) Ochoa admitted that "Restivo sought his assistance in 'knocking off' a 'Paulie or Paula,' her 'boyfriend['s] wife . . . .'" (*Ibid.*) While Ochoa claimed "the person he recruited to commit the murder was arrested *after* receiving the envelope containing the downpayment [of $500 for the murder] and information on the victim[,] [h]e ignores evidence contradicting his claim that he was only involved in a prior unsuccessful conspiracy." (*Ochoa*, *supra*, G035059, italics added.) In particular, the jury could conclude Ochoa's "claim he recruited Ruiz was patently false because the parties stipulated Ruiz had been in custody since early June [1981] and remained so until mid-1982," whereas Ochoa had "told the police Restivo contacted him in July 1981, the same month Paula was killed." This chronology gave the lie to Ochoa's story in which he exonerated himself of the murder by implicating Ruiz—who had been in custody at the time Ochoa claimed to have approached him about killing Paula. In contrast, Ochoa's "admission as to when Restivo approached him[, in July 1981,] left precious little time for Pleshe and Restivo to seek assistance from others to commit the murder." (*Ochoa*, *supra*, G035059.)

Furthermore, "[o]ther evidence contradicted [Ochoa's] claim he merely acted as an intermediary, and suggests he was more deeply involved in the murder. His limited financial resources, need to support his family, and impending job loss provided an economic motive for him to actively participate in Paula's murder so that he could share in the money offered by Restivo. While [Ochoa] denied meeting Pleshe, [Ochoa's wife at the time] testified she saw Pleshe at R.S.E., and the prosecutor introduced her prior statements admitting she saw [Ochoa] speaking with Pleshe. [Ochoa] knew Pleshe's first name was '[G]erry,' but gave inconsistent explanations for how he learned it. Finally, there was evidence [Ochoa] may have acted as the getaway driver. He met the general description of the man who remained in the car, and one of the photographs

4

seized by the police from his home depicted a second man who fit the general description of the killer." (*Ochoa, supra*, G035059.) Taken as a whole and applying the appropriate standard of review, "sufficient evidence supports [Ochoa's] participation in a conspiracy resulting in Paula's murder." (*Ibid.*)

"[Ochoa's] attack on the special circumstance findings is even less persuasive. His claim a lying-in-wait special circumstance only applies to the actual killer ignores . . . section 190.2, subdivision (c), which declares '[e]very person, not the actual killer, who, with the intent to kill, aids, abets, counsels, commands, induces, solicits, requests, or assists any actor in the commission of murder in the first degree shall be punished by death or imprisonment in the state prison for life without the possibility of parole if one or more of the special circumstances enumerated in subdivision (a) has been found to be true. . . .' Since the evidence supported a finding [Ochoa] aided and abetted in Paula's murder, it was unnecessary to prove he actually killed her to support a true finding on this special circumstance. [Citation.]

"The financial gain special circumstance finding is also supported by evidence [Ochoa] aided and abetted another person who was paid to kill Paula. [Citations.] In fact, there was evidence from which the jury could infer [Ochoa] acted as the getaway driver and presumably received some of the money for her murder.

"The evidence supports both the guilty verdict and the special circumstance findings." (*Ochoa*, *supra*, G035059.)

In 2019, acting in propria persona, Ochoa filed a petition in the trial court seeking to vacate his sentence of life without the possibility of parole for murdering Paula; this sentence was mandatory based on the proven special circumstances (§ 190.2, subd. (a)(1), (15)). Ochoa sought resentencing under section 1170.95, asserting among other things that he "was sentenced to a life term for murder under the Natural and Probable Consequences Doctrine"; he "did not act with malice aforethought [citation],

5

having no intent whatsoever to cause injury or death to the victim;" and that he "did not aid, abet, nor assist the principle with the intent to kill the victim [citation]."

The trial court appointed counsel to represent Ochoa. Briefing was filed by both parties, and a hearing was conducted. The court denied the petition. The court specifically noted in its ruling that "the language of natural and probable consequences" had been "blacked out" in the instructions provided to the jury. Therefore, "that was not something that the jury could have considered."

The court quoted from several instructions which required the jury to find beyond a reasonable doubt that Ochoa harbored the intent to kill Pleshe before it could return a true verdict on the lying in wait special circumstance: "'If you find the defendant was not the actual killer but find beyond a reasonable doubt that he was either a coconspirator or an aider' and abettor . . . 'then you must also find beyond a reasonable doubt that the defendant *with intent to kill* participated as a coconspirator and/or aided and abetted an actor in the commission of the murder of first degree in order to find this special circumstance true.'" (See CALJIC No. 8.80, italics added.) The same instruction also applied to the murder for financial gain special circumstance. (*Ibid.*) The instruction on the financial gain special circumstance further specified as necessary elements "[t]he murder was intentional" and the "defendant believed the death of the victim would result in the desired financial gain." (CALJIC No. 8.81.1.)

In denying Ochoa's petition, the court concluded, "Collectively it's clear that the jury did not rely upon felony murder as a theory nor natural and probable consequences. It doesn't appear to me they were ever presented with such theories during any of their deliberations, so for all those reasons the court finds there is no prima facie case to move forward under [section] 1170.95."

Ochoa now appeals.

6

## DISCUSSION

Years after Ochoa's conviction, as part of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015, § 4) (SB 1437), which took effect January 1, 2019, the Legislature enacted section 1170.95, which gives defendants previously convicted of murder a procedure to obtain vacatur and resentencing under certain conditions. (See *People v. Gentile* (2020) 10 Cal.5th 830, 842-843 (*Gentile*).) Those conditions include: (1) "A complaint, information, or indictment was filed against [him] that allowed *the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine*"; (2) he "was convicted of [first degree or second degree murder] following a trial"; and (3) he "could not presently be convicted of [first or second degree] murder *because of changes to Section* 188 *or* 189 made effective January 1, 2019." (§ 1170.95, subd. (a)(1)-(3), italics added.)

As applicable here, those changes to section 189 include the addition of subdivision (e). (*Gentile*, *supra*, 10 Cal.5th at p. 842.) That subdivision now provides that a person is liable for first degree murder "only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, *with the intent to kill*, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life . . . ." (§ 189, subd. (e), italics added.)

SB 1437 was adopted, in part, "to ensure that murder liability is not imposed on a person who . . . did not act with the intent to kill . . . ." (Stats. 2018, ch. 1015, § 1, subd. (f).) Therefore, a person convicted of first degree murder who *did* act with the intent to kill the victim is beyond the purview of section 1170.95's resentencing relief.

Ochoa challenges the trial court's reliance on the record of conviction to establish that he harbored such an intent to kill Paula. He suggests that "even a complete

7

review of the record of conviction is not likely to address all the facts, instructions and arguments that could be relevant to a defendant's entitlement to relief." Ochoa seems to envision a bench retrial is necessary to resolve this issue. We are not persuaded.

Indeed, Ochoa's broad argument appears to encompass the trial court's conclusion that the natural and probable consequences (NPC) doctrine did not factor into his conviction. Use of that doctrine to secure the defendant's conviction is a basic predicate for resentencing relief when, as here, it is undisputed that no other theory of imputed malice, such as the felony-murder rule, played any role at trial. (§ 1170.95, subd. (a)(1).) Although not entirely clear, Ochoa's position seems to be that the court is obliged to operate under a "presumption of [a] prima facie showing" based on his bald assertion that he was convicted under the NPC doctrine. We disagree.

Procedurally, there are multiple steps involved in the trial court's consideration of a petition filed pursuant to section 1170.95. First, the court must determine whether the petitioner has included a declaration that satisfies the statutory requirements for relief in subdivision (a), namely that petitioner was convicted under a theory of felony murder, the NPC doctrine, or another theory of guilt that would be precluded under SB 1437's revisions to the law of murder. (§ 1170.95, subd. (b)(1)(A).) Second, the petition must include the case number and date of conviction; and third, it must state whether the petitioner requests appointment of counsel. (*Id.*, subd. (b)(1)(B) & (C).)

If the petition complies with these "facially sufficient" requirements in subdivision (b), the court must appoint counsel if requested. (*Lewis*, *supra*, 11 Cal.5th at pp. 960, 970.) With the aid of counsel, who must have "the opportunity to submit briefing[]," the court then evaluates the petition to determine if it makes a prima facie showing that resentencing relief is available under the statute. (§ 1170.95, subd. (c).) This prima facie inquiry requires a hearing: "[T]he court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief." (*Ibid.*)

8

The court may turn to the record of conviction to determine whether the petitioner's requisite prima facie showing *can* be made in light of the record. (*Lewis*, *supra*, 11 Cal.5th at pp. 970-971.) "The record of conviction will necessarily inform the trial court's prima facie inquiry under section 1170.95, allowing the court to distinguish petitions with potential merit from those that are clearly meritless. This is consistent with the statute's overall purpose: to ensure that murder culpability is commensurate with a person's actions, while also ensuring that clearly meritless petitions can be efficiently addressed as part of a single-step prima facie review process." (*Lewis*, at p. 971.)

A petition for resentencing is a "motion" in the sense that it is "[a]n application for an order . . . ." (Code Civ. Proc., § 1003.) On motions brought before the trial court, "the moving party . . . has the burden of proving every fact essential to the relief requested." (*Corns v. Miller* (1986) 181 Cal.App.3d 195, 200.)

If, after consideration of the record of conviction, the court determines the petitioner has made a prima facie showing that he is entitled to resentencing under section 1170.95, the trial court must issue an order to show cause (OSC); within 60 days after the OSC is issued "the court shall hold a hearing to determine whether to vacate the murder . . . conviction and to recall the sentence and resentence the petitioner . . . ." (*Id.*, subd. (d)(3).) At that hearing, the burden shifts to the prosecutor to "prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (*Id.*, subd. (d)(3).) If an OSC issues, the parties are entitled to present evidence at the ensuing hearing. (*Ibid.*)

The record of conviction includes the instructions under which the jury convicted the defendant. (*People v. Daniel* (2020) 57 Cal.App.5th 666, 676-677.) In light of the jury instructions given here, and the jury's verdict, the trial court correctly denied Ochoa's petition; the petition was "clearly meritless" within the meaning of

*Lewis, supra,* 11 Cal.5th at page 971 as it failed to establish a prima facie case for resentencing.

"A prima facie showing is one that is sufficient to support the position of the party in question." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 851 ["'prima facie evidence . . . establishes a rebuttable presumption'"].) Put another way, a prima facie showing is "one which will suffice for proof of a particular fact unless contradicted and overcome by other evidence." (*BP Alaska Exploration, Inc. v. Superior Court* (1988) 199 Cal.App.3d 1240, 1262.) The record of conviction here prevented Ochoa from establishing a prima facie case for resentencing because the jury's special circumstances findings unequivocally indicated the jury determined Ochoa harbored the intent to kill Paula. The record also gave no indication that either the NPC doctrine or the felony-murder rule factored into the jury's deliberations. Ochoa therefore was unable to carry his prima facie burden of proof.

It is true that at the prima facie inquiry stage, the trial court ""takes [the] petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved."" (*Lewis*, *supra*, 11 Cal.5th at p. 971.) But that does not mean the court must credit factual claims that are false as established by the record. "'[I]f the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."'" (*Ibid.*) Here, Ochoa averred in his petition that he was convicted under the NPC doctrine and that he had no intent to kill Paula; the record of conviction disproved these claims.

The Supreme Court has cautioned that "[i]n reviewing any part of the record of conviction at this preliminary juncture," i.e., at the prima facie hearing stage, "a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Lewis, supra,* 11 Cal.5th at p. 972.) But these concerns are not

10

implicated here; there was no weighing of evidence or exercise of discretion by the trial court when it determined that the jury found he intended to kill Paula. The record unequivocally demonstrates the jury expressly found his intent to kill proven in its special circumstances findings.

Furthermore, Ochoa, with the aid of counsel, presented no evidence during the court's prima facie inquiry that contradicted or called into question the fact that the NPC doctrine played no role in his conviction. The jury instructions did not reference that doctrine, the felony-murder rule, or any other theory of imputed guilt. Ochoa's evidence at the prima facie hearing, which consisted solely of his unsupported assertion that the NPC doctrine had been used against him, was directly contradicted by the jury instructions. We must presume the jury understood and followed the court's instructions. (E.g., *People v. Sanchez* (2001) 26 Cal.4th 834, 852.) Because the trial court was entitled to rely on the record of conviction (*Lewis*, *supra*, 11 Cal.5th at p. 971) including the jury instructions, Ochoa failed to carry his burden at the hearing as the moving party on his section 1170.95 petition.

As the Supreme Court has explained, the bar for such a hearing "'was intentionally and correctly set very low,'" requiring only prima facie evidence. (*Lewis*, *supra*, 11 Cal.5th at p. 972.) But a low bar does not mean there is no bar at all. Here, the trial court correctly concluded Ochoa did not meet his prima facie burden to proceed to a resentencing hearing.

Ochoa nonetheless contends the record of conviction here does not preclude relief. Citing *People v. Croy* (1985) 41 Cal.3d 1, 16-18 (*Croy*), Ochoa argues that "a conviction [based on a theory of] conspiracy to commit murder does not necessarily prove a defendant intended to commit the murder *when it was actually committed.*" (Italics added.) The jury's verdict, however, reflects that it rejected Ochoa's claim he only engaged in an earlier conspiracy to kill Paula and not the one that resulted in her death. As this court explained on direct appeal, Ochoa's claim of an earlier conspiracy

11

did nothing to undermine the verdict since the prospective killer Ochoa claimed to have recruited was already in jail before Restivo approached Ochoa to arrange the actual murder.

In any event, *Croy* has no resemblance to the facts here. The jury's express special circumstances finding of first degree murder with intent to kill places Ochoa outside sentencing relief under section 1170.95. The language of the special circumstances instruction contradicts Ochoa's claim that the jury was not "required . . . to find [he] had the intent to kill when [Paula] was actually murdered." To the contrary, the instruction required the jury to find that, "with intent to kill," he "participated as a co-conspirator with or aided and abetted an actor *in the commission of the murder in the first degree*, in order to find the special circumstances to be true." (Brackets omitted, italics added.)

Ochoa similarly misplaces reliance on *People v. Nero* (2010) 181 Cal.App.4th 504 for the proposition that CALJIC No. 3.00's "'equally guilty'" language regarding accomplice liability may be confusing to jurors. (*Nero*, at p. 518.) Ochoa suggests that such language, or conspiracy allegations generally, can create a "'they're all in it together' imputation of malice" that SB 1437 was designed to eliminate. *Nero*'s concern that the "equally guilty" language might dissuade jurors from considering or finding different levels of culpability among accomplices is not present here; in fact, it is expressly dispelled by the special circumstances instruction's "intent to kill" requirement. In light of the jury's finding on that issue, duly established by the record of conviction, Ochoa was ineligible for resentencing under section 1170.95.

12

## DISPOSITION

The postjudgment order denying Ochoa's section 1170.95 petition is affirmed.


GOETHALS, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


FYBEL, J.

13